UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MARVIN MCCLINTON,       )
                        )
   Plaintiff,           )
                        )
v.                      )     09-3294
                        )
OFFICER MCNEELY,        )
   Defendant.           )

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

Plaintiff, proceeding pro se and recently paroled, challenges a strip search conducted by Defendant McNeely on July 11, 2009, in Western Illinois Correctional Center. On May 17, 2011, Judge Baker denied Plaintiff's first attempt at summary judgment because there was no affidavit from Defendant and no evidence about the standard procedures for cell searches. Judge Baker directed Defendant to file a supplemental summary judgment motion. The case was subsequently transferred to this Court.

Now before the Court is Defendant's supplemental summary judgment motion. At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A

1

genuine dispute of material fact exists when a reasonable juror could find for the nonmovant. Id.

**FACTS**

The material facts show that shift commanders at Western Illinois Correctional Center regularly order "compliance checks" of prisoners' cells. Compliance checks are visual checks of the cell to ensure that the inmates are complying with the prison's property rules. (Kuntz Aff., ¶¶ 2-3, d/e 49). The shift commander decides the location of the compliance checks and the staff assigned to them. Id at para. 3.

During a compliance check, staff "visually inspects the offender's cell to ensure that the offender's property is stored within the property box as required and only property authorized to be outside the property box remains out in the cell." (Kuntz Aff., ¶ 5, d/e 49). "The compliance check allows security staff to notice offenders accumulating excess property and prevents property from becoming a visual impairment that may threaten security. Further, the compliance check ensures no fire hazards are created by offender property." Id. at ¶ 6.

Defendant McNeely is a correctional officer at Western Illinois Correctional Center. He avers that, "[i]n the performance of a compliance check an officer may determine a shakedown is necessary for purposes of discovering contraband. All

committed persons and their clothing, property, housing, and work assignments are subject to a search at any time." (McNeely Aff., ¶ 7, d/e 49).

On July 11, 2009, Defendant conducted a compliance check of Plaintiff's cell. Defendant avers that, "[d]uring the compliance check I determined it necessary to conduct a more [invasive][1] shakedown of the cell along with a strip search of the Plaintiff." (McNeely's Aff., ¶ 7, d/e 49). Plaintiff's cellmate was also strip searched. Defendant avers that he "do[es] not specifically recall the trigger that prompted me to conduct a shakedown of the cell along with the strip search. However, it is my experience that an offender's demeanor or unwillingness to comply with a simple compliance check will inform an officer that contraband may be hidden within the offender's property or on their person." Id., ¶ 8. Defendant avers that the shakedown and strip search were not conducted to harass Plaintiff, but to search for contraband.

Defendant also avers that:

> When doing strip searches, I have been trained to have the inmate take his clothes off, and then I will check the inmate and the clothes for contraband. I will check the inmate's hands, have them lift his arms, and look at his armpits, and have him open his mouth, and look in his mouth. I have the inmate run his fingers through his hair, and have the inmate lift his testicles, and look underneath. I have the inmate lift his feet, and I inspect the bottom of his feet. I have the inmate bend

---

[1] The affidavit states "evasive," but "invasive" appears to be the intended word..

over and spread his buttocks, and I inspect in between his buttocks. I
use a flashlight to look in the inmate's mouth and in between his
buttocks if there is a flashlight available.

(McNeely Aff., ¶ 10). McNeely avers that he did not use a flashlight to strip search Plaintiff, but Plaintiff disputes this. Plaintiff testified in his deposition that McNeely "touched" the flashlight to Plaintiff's anus when Plaintiff was bent over with his buttocks spread. (Plaintiff's Dep., p. 30).[2] Plaintiff stated in his deposition that he felt that this touch challenged his "manhood" and that he "can't even take my clothes off, sleep in my boxers around other people now because of this dude, what he did to me." (Plaintiff's Dep., p. 31).[3] Additionally, according to Plaintiff, both he and his cellmate were strip searched together in the cell, where inmates across the hall could view the search. However, Plaintiff does not know if anyone else saw the search. (Plaintiff's Dep., p. 27).

## ANALYSIS

According to Plaintiff's deposition, his main problem with the way Defendant conducted the strip search was the use of the flashlight and the touching of the flashlight to Plaintiff's anus. (Plaintiff's Dep., p. 28)("Only thing I'm

---

[2]Plaintiff states in his brief that the flashlight was "inserted in his anus," but this contradicts his deposition testimony that he was only touched on the anus, so the Court does not credit the statement. Patterson v. Indiana Newspapers, Inc., 589 F.3d 357, 360 (7th Cir. 2009)(appropriate to disregard affidavits that directly contradict deposition testimony).

[3]Plaintiff was incarcerated at the time he gave his deposition. He is now on parole.

complaining about that I filed my lawsuit on is the use of a flashlight, and also the touch, that he touched me with the flashlight.").

However, in his brief Plaintiff challenges the motive for the strip search, contending that the motive was to dehumanize and humiliate him, not because of any legitimate security concern. He argues that Defendant initiated a strip search only because Plaintiff's cellmate had complained about the disheveled state in which Defendant had left the cell. According to Plaintiff, Defendant retorted that he could do what he pleased because the property in the cell was state property, just like Plaintiff and his cellmate were state property. According to Plaintiff, the strip search occurred after McNeely made this remark. Plaintiff also appears to maintain that he has never before been strip searched like Defendant did incident to a routine cell compliance check.

Courts owe substantial deference to prison officials in security matters. Whitman v. Nesic, 368 F.3d 931, 934-45 (7th Cir. 2004). As Judge Baker stated in his prior order, strip searches conducted for legitimate reasons are constitutional. Calhoun v. Detella, 319 F.3d 936, 939 (7th Cir. 2003); Whitman, 368 F.3d at 935 (7th Cir. 2004).

> In the context of bodily searches performed upon those incarcerated in our prison system, only those searches that are "maliciously motivated, unrelated to institutional security, and hence 'totally without penological justification' are considered unconstitutional.

> Meriwether, 821 F.2d at 418 (quoting Rhodes, 452 U.S. at 346, 101 S.Ct. 2392); *see also* Calhoun v. DeTella, 319 F.3d 936, 939 (7th Cir.2003). In other words, the search must amount to " 'calculated harassment unrelated to prison needs,' " Meriwether, 821 F.2d at 418 (quoting Hudson v. Palmer, 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)), with the intent to humiliate and inflict psychological pain, Fillmore v. Page, 358 F.3d 496, 505 (7th Cir.2004) (citing Calhoun, 319 F.3d at 939).

Whitman, 368 F.3d at 934 (7th Cir. 2004)(twenty minutes inmate stood naked to give urine sample for random drug testing program was not unconstitutional); *compare with* Calhoun, 319 F.3d 936 (7th Cir. 2003)(allegations that guards intentionally strip searched plaintiff in front of female officers and demeaned and sexually harassed him during search stated claim)(plaintiff alleged that guards made "'ribald comments,'" sexually explicit gestures, and "forced him to perform sexually provocative acts").

After careful consideration, this Court concludes that Defendant's motivation for conducting the strip search is a material disputed fact that only a jury can resolve. Plaintiff's testimony allows a plausible inference that Defendant was motivated by a desire to harass and humiliate Plaintiff, not by a legitimate security concern. In contrast, Defendant's testimony allows a plausible inference that Defendant had no ulterior motive in conducting the strip search and was just doing his job. On this record, summary judgment would not be appropriate. *See* Mays v. Springborn, 575 F.3d 643, 650 (7th Cir. 2009)(reversing summary

judgment and finding that inmate's retaliation claim was for jury where inmate maintained that he was subjected to a more onerous strip search after complaining).

However, Plaintiff should know that he will be able to recover only $1.00 in compensatory damages. 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Punitive damages may still be available. Calhoun, 319 F.3d at 939.

IT IS THEREFORE ORDERED:

1) Defendant McNeely's supplemental motion for summary judgment is denied (d/e 48).

2) A final pretrial conference is scheduled for Monday, March 26, 2012, at 10:30 a.m., by telephone conference. The parties are directed to submit an agreed, proposed final pretrial order at least fourteen days before the final pretrial conference. Defendant bears the responsibility of preparing the proposed final pretrial order and mailing the proposed order to Plaintiff to allow Plaintiff sufficient time to review the order before the final pretrial conference. *See* CD-IL

Local Rule 16.3.[4]

    3)  The proposed final pretrial order must include the names of all witnesses to be called at the trial and must indicate whether the witness will appear in person or by video conference.  Nonparty witnesses who are incarcerated in the IDOC will testify by video.  Other nonparty witnesses may appear by video at the Court's discretion.  The proposed pretrial order must also include the names and addresses of any witnesses for whom trial subpoenas are sought.  The parties are responsible for timely obtaining and serving any necessary subpoenas, as well as providing the necessary witness and mileage fees.  Fed. R. Civ. P. 45.

    4) Jury selection and the jury trial are scheduled for Wednesday, April 18, 2012, at 9:00 a.m., by personal appearance of the parties before this Court in Springfield, Illinois.

    5) After the final pretrial order is entered, the Clerk is directed to issue the appropriate process to secure the video appearances of the video witnesses at the trial.

ENTERED: January 27, 2012

FOR THE COURT:

---

[4] The Local Rules are listed on this District's website: www.ilcd.uscourts.gov.  A sample pretrial order is attached to those rules.

    **s/Sue E. Myerscough**
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE